400 So.2d 820 (1981)
Laura N. BUCKNER, Appellant/Cross-Appellee,
v.
ALLERGAN PHARMACEUTICALS, INC., a Foreign Corporation, et al, Appellees, and
Philips Roxanne Laboratories, Inc., et al, Cross-Appellants.
No. 80-654.
District Court of Appeal of Florida, Fifth District.
July 1, 1981.
*821 Larry Sands, P.A., Daytona Beach, for appellant/cross-appellee.
Carey N. Bos, of Rogers & Dowling, P.A., Orlando, for appellee Allergan Pharmaceuticals, Inc.
Dudley D. Allen, of Milam & Wilbur, Jacksonville, for appellee/cross-appellant Armour Pharmaceutical Company.
Sutton G. Hilyard, Jr., and D. Andrew DeBevoise, of Pitts, Eubanks & Ross, P.A., Orlando, for appellee/cross-appellant Philips Roxanne Laboratories, Inc.
A. Craig Cameron, of Gosney, Cameron, Parsons & Marriott, P.A., Daytona Beach, for appellee Smith, Miller & Patch, a Division of Cooper Laboratories.
Ronald L. Harrop, of Gurney, Gurney & Handley, P.A., Orlando, for appellee E.R. Squibb & Sons, Inc.
Ted R. Manry, III, and David J. Kadyk, of MacFarlane, Ferguson, Allison & Kelly, Tampa, for appellee Upjohn Company.
COWART, Judge.
Appellant filed a complaint based upon strict liability in tort for bodily injuries resulting from alleged defective products against many manufacturers of prescription steroid drugs. Appellant, in her complaint, alleged various doctors prescribed corticosteroids for eye disorders without warning her of known dangerous side effects; that she took the drugs without knowledge of their danger and that as a result she developed aseptic necrosis of her femoral heads which was one of the known harmful side effects. Additionally, it was alleged that the defendant manufacturers knew of the numerous dangerous effects of such drugs and gave adequate warnings to the medical profession but also knew or should have known that the medical profession was not adequately relaying those warnings to the consuming public. This appeal results from a trial court dismissal of the complaint for failure to state a cause of action. We affirm.
Appellant argues that the doctrine of strict liability[1] requires the manufacturer *822 of an inherently dangerous product to convey a fair and adequate warning of its dangerous potentialities to the ultimate consumer, as was applied to a distributor of carbon tetrachloride in Tampa Drug Company v. Wait, 103 So.2d 603 (Fla. 1958), and to a manufacturer of a lead arsenic insecticide spray in Edwards v. California Chemical Company, 245 So.2d 259 (Fla.4th DCA), cert. denied, 247 So.2d 440 (Fla. 1971).
Appellant cites Lake v. Konstantinu, 189 So.2d 171 (Fla.2d DCA 1966), as authority for the proposition that allegations that the manufacturer of a prescription drug failed to adequately warn the ultimate consumer raises a question of fact for jury determination. It does appear from the opinion in Lake that the plaintiff sued both the prescribing physician and the drug manufacturer and that the trial court did deny the manufacturer's motion to dismiss for failure to state a cause of action. However, the manufacturer did not appeal that ruling but filed an answer and moved for summary judgment which was granted. When the plaintiff appealed the summary judgment the manufacturer apparently did not cross-assign as error the trial court's denial of its motion to dismiss. For this reason the appellate court considered the manufacturer's brief as to the liability of the manufacturer to the ultimate patient to be "utterly irrelevant" to the issue on appeal which it considered to be whether an issue of material fact existed which precluded the granting of the summary judgment. Lake therefore relates only to summary judgments and does not consider the question raised by this appeal.
A manufacturer of a dangerous commodity, such as a drug, does have a duty to warn but when the commodity is a prescription drug[2] we hold that this duty to warn is fulfilled by an adequate warning given to those members of the medical community lawfully authorized to prescribe, dispense and administer prescription drugs.[3] Although we find no Florida case directly in point, this view is in accord with numerous decisions from other jurisdictions. See, e.g., Chambers v. G.D. Searle and Company, 567 F.2d 269 (4th Cir.1977) (applying Maryland law); Givens v. Lederle, 556 F.2d 1341 (5th Cir.1977) (applying Florida law); Dalke v. Upjohn Company, 555 F.2d 245 (9th Cir.1977) (applying Washington law); Salmon v. Park Davis and Company, 520 F.2d 1359 (4th Cir.1975) (applying North Carolina law); McCue v. Norwich Pharmacal Company, 453 F.2d 1033 (1st Cir.1972) (applying New Hampshire law); Sterling Drug, Inc. v. Cornish, 370 F.2d 82 (8th Cir.1966) (applying Missouri law); Terhune v. A.H. Robbins Company, 90 Wash.2d 9, 577 P.2d 975 (1978); 28 C.J.S. Drugs and Narcotics Supplement § 57 (1974). Compare Terhune, (characterizing the philosophy as a well established rule) with Reyes v. Wyeth Laboratories, 498 F.2d 1264 (5th Cir.), cert. denied, 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974) (characterizing the special standard as an exception to the restatement general rule). The rationale is explained in Reyes as follows
Prescription drugs are likely to be complex medicines, esoteric in formula and varied in effect. As a medical expert, the prescribing physician can take into account the propensities of the drug, as well as the susceptibilities of his patient. His is the task of weighing the benefits of any medication against its potential dangers. The choice he makes is an informed one, an individualized medical judgment bottomed on a knowledge of both patient and palliative. Pharmaceutical companies then, who must warn ultimate purchasers of dangers inherent in patent drugs sold over the counter, in selling prescription drugs are required to warn only the prescribing physician, who acts as a "learned intermediary" between manufacturer and consumer.
*823 Id. at 1276. This reasoning applies even in an action based upon the doctrine of strict liability as set out in section 402A of the Restatement (Second) of Torts (1959). In Terhune, the Supreme Court of Washington reiterated acceptance of the doctrine of strict liability as embodied in section 402A and held that Comment k[4] governed the case before them. The court noted
[T]he comment does not purport to state what is `proper warning' where such a product is involved. However, it has become a well-established rule that in such cases, the duty of the manufacturer to warn of dangers involved in use of a product is satisfied if he gives adequate warning to the physician who prescribes it [citations omitted]. 577 P.2d at 977.
The court went on to explain,
[w]here a product is available only on prescription or through the services of a physician, the physician acts as a `learned intermediary' between the manufacturer or seller and the patient. It is his duty to inform himself of the qualities and characteristics of those products which he prescribes for or administers to or uses on his patients, and to exercise an independent judgment, taking into account his knowledge of the patient as well as the product. The patient is expected to and, it can be presumed, does place primary reliance upon that judgment. The physician decides what facts should be told to the patient. Thus if the product is properly labeled and carries the necessary instructions and warnings to fully apprise the physician of the proper procedures for use and the dangers involved, the manufacturer may reasonably assume that the physician will exercise the informed judgment thereby gained in conjunction with his own independent learning, in the best interest of the patient. Id. at 978.
In the instant case, appellant argues that the general rule should not apply because of the additional allegation that the manufacturers knew or should have known that the medical profession was not warning patients of potential side effects. A doctor's duty is to
inform his patient what a reasonable prudent medical specialist would tell a person of ordinary understanding of the serious risks and the possibility of serious harm which may occur from a supposed course of therapy so that the patient's choice will be an intelligent one, based upon sufficient knowledge to enable him to balance the possible risks against the possible benefits. [citations omitted] The extent of disclosure is a matter of medical judgment. ZeBarth v. Swedish Hospital Medical Center, 81 Wash.2d 12, 499 P.2d 1, 11 (1972).
Therefore the doctor's duty to warn patients of possible side effects is not absolute. See Annot., 79 A.L.R. 1028 (1977) *824 (Physician's duty to inform patient of nature and hazards of disease or treatment), and cases cited therein. In Florida this issue has been addressed along with the question of informed consent and the duty of the physician to inform with the extent of the information which may be required depending upon the particular circumstances. In Thomas v. Berrios, 348 So.2d 905 (Fla.2d DCA 1977), the Second District Court quoted the above language from ZeBarth v. Swedish Hospital Medical Center and held that the standard was whether a reasonable medical practitioner in the community would make the pertinent disclosures under the same or similar circumstance. Since physicians do not have an absolute duty to inform patients of all possible side effects in every instance, failure to do so in a particular instance should not give rise to a duty in the manufacturer.
Although we hold the complaint does not state a cause of action it did raise a good faith justiciable issue in law sufficient to preclude an award of attorney's fees under section 57.105, Florida Statutes (1979). See Allen v. Estate of Dutton, 384 So.2d 171 (Fla.5th DCA), pet. for review denied, 392 So.2d 1373 (Fla. 1980).
The order dismissing the complaint is
AFFIRMED.
ORFINGER, J., concurs.
SHARP, J., concurs specially with opinion.
SHARP, Judge, concurring specially.
This case poses two questions of "first impression" in Florida: (1) does a drug manufacturer who knows a particular doctor is failing to give warnings concerning side effects of toxic drugs to his patients have a duty to warn the patient? and (2) do drug manufacturers who know most doctors are not, as a group, giving the warnings concerning toxic drugs, have a duty to warn the patients?
The best answer to both questions is found in Chapter 500, Florida Statutes (1979). This complex statute carefully sets out when and whether drug manufacturers or dispensers must give "... warnings against use in those pathological conditions or by children where its use may be dangerous to health, or against unsafe dosage or methods or duration of administration or application, in such manner and form, as are necessary for the protection of users ..." Section 500.15(13)(a) covers "unsafe" kinds of drugs, such as the steroids involved in this case, and subsection (b) exempts the statutory warning requirement for these drugs, if prescribed by a licensed physician under the circumstances involved in this case.[1]
Although Chapter 500 charges a state agency (rather than private parties) with its enforcement, and it also does not expressly deal with the scope of tort liability, it would be inappropriate for this court to adopt a higher or a "conflicting" duty to warn for drug manufacturers than is contained in Chapter 500. Cf. United Services Auto. Ass'n v. Butler, 359 So.2d 498 (Fla.4th DCA 1978). (Imposition of civil liability is for the legislature; courts should exercise judicial restraint).
NOTES
[1] The doctrine of strict liability as stated by the American Law Institute Restatement (Second) of Torts, section 402A has been adopted in Florida. West v. Caterpillar Tractor Company, Inc., 336 So.2d 80 (Fla. 1976).
[2] Prescription drugs were not involved in Tampa Drug Company and Edwards.
[3] Chapters 458, 465 and 500, Florida Statutes, evidences legislated public policy to rely on physicians and pharmacists to protect the consuming public from injury by product use when the product is a prescription drug. See, e.g., §§ 500.02(1) and 500.151, Fla. Stat. (1979).
[4] § 402A, Comment k. Unavoidably unsafe products. There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. An outstanding example is the vaccine for the Pasteur treatment of rabies, which not uncommoningly leads to very serious and damaging consequences when it is injected. Since the disease itself invariably leads to a dreadful death, both the marketing and the use of the vaccine are fully justified, notwithstanding the unavoidable high degree of risk which they involve. Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it unreasonably dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason, cannot legally be sold except to physicians, or under the prescription of a physician. It is also true in particular of many new or experimental drugs as to which, because of the time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparent reasonable risk.
[1] Section 500.15(13)(b) provides:

Any drug dispensed by filling or refilling a written or oral prescription of a practitioner licensed by law to administer such drug, shall be exempt from the requirements of this section, except subsections (1), (9), (11), (12) and the packaging requirements of subsection (7) and (8), if the drug bears a label containing the name and address of the dispenser or seller, the serial number and date of such prescription or its filling, the name of the prescriber and, if stated in the prescription, the name of the patient and the directions for use and cautionary statements. This exemption shall not apply to any drug dispensed in the course of the conduct of a business of dispensing drugs pursuant to diagnosis by mail, or to any drug dispensed in violation of paragraph (a) of this subsection... . (Emphasis supplied).