Brian FIELDS, Plaintiff,

v.

**MYLAN PHARMACEUTICALS, INC., et al., Defendants.**

**Case No. 4:08–cv–484/RS/WCS.**

United States District Court,
N.D. Florida,
Tallahassee Division.

Oct. 27, 2009.

B. Kristian W. Rasmussen, Cory Watson Crowder etc., Birmingham, AL, for Plaintiff.

Clem C. Trischler, Jr., Pietragallo Gordon Alfano Bosick etc., Pittsburgh, PA, William E. Whitney, Dunlap & Shipman PA, Tallahassee, FL, for Defendants.

### *ORDER*

RICHARD SMOAK, District Judge.

Before me are Defendants' Motion for Summary Judgment (Doc. 42) and Plaintiff's Response in Opposition (Doc. 57). Defendants' Motion for Summary Judgment is **GRANTED.**

### I. Standard of Review

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993). Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir.1992) (*citing Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir.1985)). However, a mere scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990) (*citing Anderson*, 477 U.S. at 251, 106 S.Ct. at 2512).

### II. Background

Plaintiff alleges that he was injured after taking a generic drug manufactured by Defendants. The drug, phenytoin, is an FDA-approved drug prescribed for the treatment of epilepsy and seizure disorders. After being treated with the medication on or about August 21, 2004, Plaintiff claims that he developed a rash and was ultimately diagnosed with Stevens–Johnson Syndrome (SJS) and/or toxic epidermal necrolysis (TES).

In an eight-count complaint, Plaintiff alleges that Defendants were negligent, in breach of warranty, fraudulently misrepresented and concealed, violated Florida's Unfair Trade Practices and Consumer Protection laws, and are strictly liable. On February 11, 2009, I granted partial dismissal pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted as to Counts III

(breach of warranty) and IV (violation of Florida's Unfair Trade Practices and Consumer Protection Laws). (Doc. 16).

Defendants have filed for summary judgment on four distinct grounds: the statute of limitations, the learned intermediary doctrine, federal preemption, and untimely disclosure of expert witnesses.

### III. Material Facts

On August 20, 2004, Plaintiff sought treatment from Dr. Nak Paek for a seizure-like medical condition that he was experiencing. Without reviewing any of the drug labeling provided by Defendants, Dr. Paek prescribed phenytoin, a generic drug manufactured by Defendants. On September 9, 2004, Plaintiff went to the emergency room at Shands Jacksonville Hospital, complaining of a rash. That day, doctors made a diagnosis of SJS, and attributed Plaintiff's rash to his use of phenytoin. On September 9 or 10, 2004, doctors informed Plaintiff and his mother that his injuries likely resulted from his use of phenytoin.

On October 21, 2008, more than four years after Plaintiff was hospitalized, Plaintiff filed his complaint against Defendants. (Doc. 1).

### IV. Analysis

#### A. Statute of Limitations

"Statutes of limitation serve important purposes in our legal system and should be strictly enforced in all but the most egregious of circumstances." *Arce v. Garcia,* 434 F.3d 1254, 1265 (11th Cir.2006). Products liability actions in Florida are subject to a four year statute of limitations. Fla. Stat. § 95.11(3)(2008). The Florida Legislature has made clear that a product liability action:

> must be begun within the period prescribed in this chapter, with the period running from the date that the facts giving rise to the cause of action were discovered, or should have been discov-

ered with the exercise of due diligence, rather than running from any other date prescribed elsewhere in s. 95.11(3).

Fla. Stat. § 95.031(2)(b)(2008).

■ Plaintiff's cause of action began to run, at the latest, on September 10, 2004, because by then Plaintiff had discovered that his injuries were likely caused by phenytoin. Plaintiff admits that he first discovered that his injuries were linked to phenytoin from a conversation between a doctor and his mother conducted in his presence while he was hospitalized in Jacksonville. (Doc. 42–10 at 7–8). Plaintiff further admits that he was alert during the conversation and had no difficulty remembering it. *Id.*

Because of Plaintiff's admission, the uncontroverted evidence demonstrates that Plaintiff knew of the extent and likely cause of his injuries during the first or second day of his hospitalization. Medical records show that Plaintiff was hospitalized September 9–10, 2004. Accordingly, Plaintiff discovered the facts giving rise to the cause of action on September 10, 2004, at the latest. I find Plaintiff's allegation that he was mentally and physically incapacitated until November 18, 2004, baseless because, by Plaintiff's own admission, Plaintiff was alert and understood the conversation in which his doctor stated that phenytoin was the likely cause of his injuries. Consequently, Plaintiff is not entitled to a tolling of the statute of limitations.

Because Plaintiff discovered the facts giving rise to the cause of action more than four years prior to filing this action, and because no facts exist that could toll the statute of limitations, Defendants are entitled to summary judgment.

#### B. Learned Intermediary

■ Even if the statute of limitations did not bar Plaintiffs' claims, Defendants

are entitled to summary judgment on all counts because Plaintiff has failed to establish that any alleged inadequacy in the warnings provided by Defendants were the proximate cause of Plaintiff's injuries. Specifically, Plaintiff's prescribing physician, Dr. Nak Paek, failed to review the warnings Defendants provided with its phenytoin product, thereby invoking the learned intermediary doctrine.

Under the learned intermediary doctrine, "a manufacturer of a dangerous commodity, such as a drug, does have a duty to warn but when the commodity is a prescription drug ... this duty to warn is fulfilled by an adequate warning given to those members of the medical community lawfully authorized to prescribe, dispense and administer prescription drugs." *Buckner v. Allergan Pharms., Inc.*, 400 So.2d 820, 822 (Fla. 5th DCA 1981) *rev. denied,* 407 So.2d 1102 (Fla.1981). The rationale for this doctrine is that prescribing physicians have the education, training, and experience to weigh the risks and benefits of a medication for a patient and make informed prescription decisions. 400 So.2d at 822. Furthermore, a prescription drug manufacturer's duty to warn is directed to the physician, not to the patient. *Felix v. Hoffmann–LaRoche, Inc.* 540 So.2d 102, 104 (Fla.1989) (citing *Buckner*). Consequently, Plaintiff's failure to warn claims can succeed only if the warnings were deficient with respect to the prescribing physician and the physician relied upon those warnings in prescribing the medication. Where a physician fails to review the warnings issued by the manufacturer, proximate cause cannot be established.

Plaintiff's treating physician, Dr. Nak Paek, has testified that he prescribed phenytoin and that prior to prescribing the medication he did not refer to Defendants' labeling for the product. (Doc. 42–6 at 10, 12). Dr. Paek has further testified that he was aware of a generalized risk of adverse and potentially fatal reactions to the drugs prescribed to Plaintiff. (Doc. 42–6 at 5–9). Even though Dr. Paek had never read Defendants' label, he testified that he was aware of the risk of SJS and TEN and that it was his responsibility to make an informed clinical judgment that the benefits of the drug outweighed its potential risks. (Doc. 42–6 at 3–4). Thus, based on the testimony of the prescribing physician, the warnings provided with phenytoin, that specifically warned of SJS and TEN, cannot form the basis of liability because the labeling formed no part of the physician's decision to prescribe the drug, and thus were not the proximate cause of Plaintiff's injuries.

Plaintiff has failed to offer any evidence establishing that the phenytoin warnings were deficient. Even if the warnings were deficient, however, Dr. Paek's testimony establishes that the phenytoin labeling and warnings played no role in the physician's decision to prescribe phenytoin to Plaintiff. Moreover, different labeling would not have led Dr. Paek to decide not to prescribe the drug to Plaintiff because Dr. Paek never consulted the labeling in the first place. Having relied on his own background, training, and expertise, rather than the label, it is clear that Defendants' warnings played no causal role in Plaintiff's injuries, and the warnings, or lack thereof, cannot provide a basis for any recovery by Plaintiff.

**C.  Federal Preemption**

Because I have found that both the statute of limitations and the doctrine of learned intermediary are adequate bases for granting summary judgment, I will not address the merits of Defendants' assertion of federal preemption.

**D.  Expert Witness Disclosures**

Defendants assert that because Plaintiff failed to comply with the requirements of

Rule 26 concerning the disclosure of expert witnesses that Plaintiff will be unable to demonstrate a defect in Mylan's product. Because I have found other adequate bases for granting summary judgment, I shall not address this issue other than to point out that Plaintiff has made no offer of expert opinions in support of his response in opposition to Defendants' motion for summary judgment. Given that product liability lawsuits are dependent on expert testimony, this oversight is fatal to Plaintiff's cause of action.

## V. Conclusion

**IT IS ORDERED:**

1. Defendants' Motion for Summary Judgment (Doc. 42) is **GRANTED.** The clerk is directed to enter judgment for the Defendants and to close the case file.

2. Defendants' Motions and Supplemental Motion to Strike Plaintiff's Untimely Expert Disclosure (Docs. 34, 35, 55) are **DENIED as moot.**

3. Plaintiff's Motion for Reconsideration (Doc. 45) is **DENIED as moot.**

4. Plaintiff's Motion for Pre–Trial Conference (Doc. 48) is **DENIED as moot.**