Jason LEVINE, Plaintiff,

v.

WYETH INC., et al., Defendants.

Case No.: 8:09–cv–854–T–33AEP.

United States District Court,
M.D. Florida,
Tampa Division.

Feb. 10, 2010.

Daniel J. McGlynn, McGlynn, Glisson, Mouton, Baton Rouge, LA, Jason Richard Fraxedas, Steven R. Maher, The Maher Law Firm, PA, Winter Park, FL, William B. Curtis, Miller, Curtis & Weisbord, LLP, Dallas, TX, for Plaintiff.

Edward W. Gerecke, David J. Walz, Carlton Fields, PA, Tampa, FL, Jeffrey R. Pilkington, Davis, Graham & Stubbs, LLP, Denver, CO, Henniger S. Bullock, Sharon A. Sandell, Mayer Brown LLP, New York, NY, for Wyeth Pharmaceuticals, Inc. and Schwarz Pharma, Inc.

Harold Adam Saul, Kubicki Draper, Tampa, FL, for McKesson Corporation.

C. Howard Hunter, Hill, Ward, Henderson, Tampa, FL, Jon W. Oebker, Nicole Braden Lewis, Richard A. Dean, Tucker, Ellis & West, LLP, Cleveland, OH, for Actavis Elizabeth, LLC and Actavis, Inc.

## ORDER

VIRGINIA M. HERNANDEZ COVINGTON, District Judge.

This cause comes before the Court pursuant to a Motion for Summary Judgment (Doc. # 44), filed by Defendants Wyeth, Wyeth Pharmaceuticals Inc., and Schwarz Pharma, Inc. (collectively "Defendants"). On January 13, 2010, the Honorable Anthony E. Porcelli, United States Magistrate Judge, issued a Report and Recommendation (Doc. # 76), recommending that the motion be granted in favor of Defendants.

As of this date, there are no objections to the report and recommendation, and the time for the parties to file such objections has elapsed.

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify the magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); *Williams v. Wainwright,* 681 F.2d 732, 732 (11th Cir.1982), *cert. denied,* 459 U.S. 1112, 103 S.Ct. 744, 74 L.Ed.2d 964 (1983). In the absence of specific objections, there is no requirement that a district judge review factual findings de novo, *Garvey v. Vaughn,* 993 F.2d 776, 779 n. 9 (11th Cir. 1993), and the court may accept, reject or modify, in whole or in part, the findings and recommendations. 28 U.S.C. § 636(b)(1)(C). The district judge reviews legal conclusions de novo, even in the absence of an objection. *See Cooper–Houston v. S. Ry. Co.,* 37 F.3d 603, 604 (11th Cir.1994); *Castro Bobadilla v. Reno,* 826 F.Supp. 1428, 1431–32 (S.D.Fla.1993), *aff'd,* 28 F.3d 116 (11th Cir.1994).

Upon consideration of the Report and Recommendation of the Magistrate Judge and upon this Court's independent examination of the file, it is determined that the Magistrate Judge's Report and Recommendation should be adopted.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DE-CREED:**

(1) Judge Porcelli's Report and Recommendation (Doc. # 76) is **ADOPTED, CONFIRMED,** and

**APPROVED** in all respects and is made a part of this Order for all purposes, including appellate review.

(2) Defendants' Motion for Summary Judgment (Doc. # 44) is **GRANTED.**

(3) The Clerk is directed to enter judgment in favor of Defendants Wyeth, Wyeth Pharmaceuticals Inc., and Schwarz Pharma, Inc. and against Plaintiff as to all claims alleged against these Defendants.

## REPORT AND RECOMMENDATION

ANTHONY E. PORCELLI, United States Magistrate Judge.

Before the Court is a Motion for Summary Judgment (Dkt. No. 44) filed by Defendants Wyeth, Wyeth Pharmaceuticals Inc., and Schwarz Pharma, Inc. (collectively "Defendants"). For the reasons given below, the Court **RECOMMENDS** that Summary Judgment be **GRANTED** in favor of Defendants.[1]

### I. Factual Background

Plaintiff Jason Levine ("Plaintiff") suffers from tardive dyskinesia, a drug-induced neurological movement disorder. (Dkt. No. 59 pp. 2.) Plaintiff alleges that he developed this condition as a result of ingesting generic metoclopramide, which is used primarily for the treatment of gastrointestinal problems. (Id. pp. 1–2.) Defendants are pharmaceutical corporations that have engaged in, at times relevant to this lawsuit, the manufacture of name brand metoclopramide, sold under the proprietary name Reglan. (Dkt. No. 44 Exs. A–B.)

Plaintiff alleges that Defendants acted as the Reference Listed Drug ("RLD") Holder for Reglan, which was the Reference Listed Drug for generic metoclopramide. Plaintiff concedes he never ingested Reglan or any other metoclopramide made by the Defendants. (Id. Ex. C.) However, Plaintiff argues that despite mounting evidence that long term metoclopramide use carried a risk of tardive dyskinesia far greater than indicated on the label, Defendants failed to take any steps to change the label warnings. Plaintiff cites to multiple studies which suggested that the prevalence and severity of metoclopramide-induced tardive dyskinesia were underestimated, and occurred approximately 100 times more often than previously reported when metoclopramide was used beyond a twelve week period. (See Dkt. No. 59 Exs. A–D.) According to Plaintiff, Defendants either negligently or intentionally distributed false and misleading information regarding the risks of using metoclopramide. (Id. pp. 4.) And although Plaintiff never ingested Reglan or generic metoclopramide made by Defendants, he claims that his physician(s) may have relied on information provided by Defendants (such as information found in labels, promotional materials, package inserts, etc.) when they prescribed him generic metoclopramide. (Id. pp. 6.)

Plaintiff's causes of action are set forth generally against each of the named defendants in this action. Accordingly the Court considers each cause of action as they pertain to the instant Motion and Defendants. With respect to Count I alleging negligence, Plaintiff asserts that

**1.** Defendants' Motion for Summary Judgment (Dkt. No. 44) was referred to the undersigned by the Honorable Virginia M. Hernandez Covington (Dkt. No. 68).

Defendants owed a duty to the general public to exercise reasonable care in the marketing of metoclopramide and breached that duty because they failed to warn that, as designed, metoclopramide was capable of causing serious personal injuries such as those suffered by Plaintiff. (Dkt. No. 1 ¶ 98.) Additionally, Plaintiff alleges, *inter alia*, that Defendants represented to physicians that Reglan was safe and effective for use, that Defendants failed to provide adequate training or information to medical care providers for appropriate use of Reglan, and that Defendants failed to warn the public that Reglan should not be prescribed for more than twelve weeks. (*Id.* ¶¶ 99(a)-(j).)

As to Count II, Plaintiff alleges Defendants are strictly liable under a products liability theory for placing into the stream of commerce a defective and unreasonably dangerous product. (*Id.* ¶ 103.) Although Plaintiff concedes that he did not ingest Defendants' drug, Plaintiff argues in his Opposition that the package insert/labeling information formed part of an overall product. (Dkt. No. 59 pp. 17–18.) Plaintiff asserts that Defendants are the equivalent of a component part manufacturer because they provided the information in the insert/label which was allegedly defective. (*Id.*) Additionally, Plaintiff alleges under Count III that Defendants breached their express and implied warranties of merchantability because the metoclopramide was unfit for its intended purposes. (*See* Dkt. No. 1 ¶¶ 106–08.)

Under Count IV, Plaintiff alleges that Defendants materially misrepresented or fraudulently concealed adverse information regarding the safety and effectiveness of metoclopramide. Specifically, Plaintiff alleges Defendants concealed from Plaintiff and the public that metoclopramide use significantly increased the probability of neuromuscular side effects, that metoclopramide should not be used for more than twelve weeks, and that it was not fully and adequately tested. (*Id.* ¶ 114.)

Finally, Plaintiff alleges in Count V that Defendants committed negligence *per se* because the product label and package insert for metoclopramide was misbranded within the meaning of 21 U.S.C. §§ 352(a) and (f), since it was false and misleading and failed to give adequate warnings and directions for use by physicians who prescribe it. (*Id.* ¶ 117.)

Defendants argue in their Motion that a plaintiff cannot hold a manufacturer liable under any theory of product liability if the plaintiff never used the manufacturer's product. Defendants point to a plethora of case law that have found that brand drug manufactures cannot be held liable for injuries allegedly caused by ingestion of their competitors' generic drugs.[2] Finally, Defendants contend that holding brand manufacturers responsible for injuries caused by generic manufacturers would have devastating consequences on the pharmaceutical industry.

## II. *Standard for Summary Judgment*

Summary judgment is appropriate where "there is no genuine issue as to any

---

**2.** Defendants cite to twenty-nine courts applying the laws of eighteen other states, (*see* Dkt. No. 44 pp. 13–15), which include twenty decisions from fifteen states holding Wyeth and/or Schwarz not liable for injuries allegedly caused by the ingestion of competitors' generic metoclopramide (*id.* pp. 15). The Court also notes Defendants' Third Notice of Supplemental Authority (Dkt. No. 73) which cites *Dietrich v. Wyeth, Inc.*, No. 50–2009–CA–021586 (Fla.Cir.Ct.) wherein the trial court orally granted summary judgment in favor of Wyeth on December 4, 2009.

material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing the motion, the Court must view the evidence and all factual inferences in a light most favorable to the non-moving party, and all reasonable doubts about the facts are resolved in favor of the non-movant. *Dadeland Depot, Inc. v. St. Paul Fire and Marine Ins. Co.,* 483 F.3d 1265, 1268 (11th Cir.2007) (citations omitted).

When a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 323, 106 S.Ct. 2548.

### III. *Discussion and Analysis*

The material facts relevant to the issue before the Court are not in dispute. Plaintiff does not contest the fact that he ingested only generic metoclopramide and did not ingest any metoclopramide, whether generic or name brand Reglan, manufactured by Defendants. Defendants do not dispute for the purposes of this Motion that Plaintiff suffers from tardive dyskinesia and that his condition apparently resulted from prolonged use of metoclopramide. Defendants simply claim that they cannot be held liable under any of Plaintiff's causes of actions as a matter of law because the Plaintiff never used their product.

Plaintiff alleges that Defendants served as the RLD Holder during the time relevant to the present lawsuit. Plaintiff argues that doctors, pharmacists, and patients, in prescribing or being prescribed generic drugs, rely upon information provided by RLD Holders like the Defendants. Plaintiff submits that a question of material fact still exists "as to whether the prescribing physician(s) relied upon information disseminated by Wyeth and/or Schwartz [sic]." (Dkt. No. 59 pp. 10–11.) However, as explained below, whether a physician relied on the warning label issued by Wyeth and/or Schwarz in prescribing generic metoclopramide to Plaintiff does not affect the Court's analysis. Thus, the Court is left with a question of law-whether a brand name manufacturer, as a RLD Holder, owes a duty to generic manufacturers' consumers, and can therefore be held liable under Florida law.

Florida courts and the overwhelming majority courts in the United States have held that brand manufacturers are not liable for injuries caused by generic drugs produced by generic manufacturers, to include the generic drug at issue in this case. *See, e.g., Sharp v. Leichus,* No.2004–CA–0643, 2006 WL 515532 (Fla.Cir.Ct. Feb. 17, 2006), *aff'd per curiam,* 952 So.2d 555 (Fla. Dist.Ct.App.2007); *Mensing v. Wyeth,* 588 F.3d 603 (8th Cir.2009); *Foster v. Am. Home Prods. Corp.,* 29 F.3d 165 (4th Cir. 1994). *But see Conte v. Wyeth,* 168 Cal.

App.4th 89, 85 Cal.Rptr.3d 299 (2008) (holding brand manufacture may be liable). Defendants also cite to *Engle v. Liggett Group, Inc.,* 945 So.2d 1246, 1276 (Fla. 2006) for the proposition that a defendant cannot be held liable if they do not manufacture or sell any of the products that allegedly caused the plaintiff's injuries. *See also Liggett Group Inc. v. Engle,* 853 So.2d 434, 466 n. 44 (Fla.Dist.Ct.App.2003) ("[i]t is aphoristic that a plaintiff cannot prevail on claims for negligence, breach of warranty or strict liability, unless the plaintiff establishes that the product which allegedly caused the plaintiff's injury was manufactured or sold by the defendant"), *aff'd on this ground, rev'd on other grounds,* 945 So.2d 1246.

### A. Negligence

■ "The determination of the existence of a duty of care in a negligence action is a question of law." *Goldberg v. Fla. Power & Light Co.,* 899 So.2d 1105, 1110 (Fla. 2005). "The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others." *McCain v. Fla. Power Corp.,* 593 So.2d 500, 502 (Fla.1992). However, "a legal duty is not established by evidence of foreseeability alone." *Swett v. U.S.,* 2007 WL 1017664, at *3 (M.D.Fla.2007) (*citing Aguila v. Hilton, Inc.,* 878 So.2d 392, 396 (Fla.Dist.Ct.App.2004)). There must also be allegations that the defendant's conduct created or controlled the risk. *Id.*

■ "[A] drug manufacturer owes a duty to warn prescribing physicians of the

dangerous side effects of *its* prescription drugs." *Felix v. Hoffmann–LaRoche, Inc.,* 513 So.2d 1319, 1320 (Fla.Dist.Ct. App.1987) (emphasis added). Here, although Plaintiff readily admits he ingested generic metoclopramide that was not manufactured by Defendants, he maintains that Defendants still owed a duty of care to him and his physician.[3] Plaintiff argues that the Defendants' allegedly inadequate label foreseeably created a potential for harm since doctors and patients would have relied on Defendants' labels even when prescribing generic metoclopramide not made by Defendants. Plaintiff relies heavily on *Conte v. Wyeth, Inc.,* 168 Cal. App.4th 89, 85 Cal.Rptr.3d 299 (Cal.Ct. App.2008) which held that brand drug manufacturer Wyeth owed a duty to the plaintiff even though the plaintiff never ingested drugs made by Wyeth. The court found that Wyeth knew or should have known that a significant number of patients' doctors relied on Wyeth's product information when they prescribed generic metoclopramide. *Conte,* 168 Cal.App.4th at 107, 85 Cal.Rptr.3d 299.

The holding in *Conte* is not binding on this Court, and runs counter to the overwhelming majority of case law, including that of Florida. The Court cannot impose a duty of care on Defendants here where the generic manufacturers are responsible for the contents of their label, and where the Defendants lacked direct control as to the contents of that label.[4] *See also Sharp,* 2006 WL 515532, at *7 (finding brand drug manufacturers were not in a

---

3. The Court notes that in Florida as a general rule, drug companies have the duty to warn of a drug's dangerous side effects; however, the duty to warn is directed to physicians rather than patients under the "learned intermediary" doctrine. *Felix v. Hoffmann–LaRoche, Inc.,* 540 So.2d 102, 104 (Fla.1989).

4. *See Wyeth v. Levine,* 129 S.Ct. 1187, 1197– 98 ("it has remained a central premise of federal drug regulation that the manufacturer bears responsibility for the content of its label at all times") (*citing* 21 CFR §§ 201.80(e) and 314.80(b) which apply to both generic and brand manufacturers).

position to create or control the generic manufacturer's making or distribution of the product that allegedly caused the injury). Other courts addressing this issue have similarly concluded that a brand manufacturer does not owe a duty to customers using a generic version of its drug made by other manufacturers. *See, e.g., Mensing,* 588 F.3d at 612–14; *Foster,* 29 F.3d at 171; *Swicegood v. Pliva, Inc.,* 543 F.Supp.2d 1351, 1358 (N.D.Ga.2008) ("solely by providing the initial safety labeling, [the brand manufacturers] did not assume the duty of labeling generic Reglan . . . the generic manufacturer [ ] used its own label on its products, which it was free to alter"). Because Defendants owed no duty to Plaintiff, it is not relevant whether Plaintiff's physician relied on Defendants' product labels, package inserts, or the Physician Desk Reference in prescribing Plaintiff generic metoclopramide.

Since it is uncontested that Plaintiff did not ingest a product made by Defendants the Court finds as a matter of law that Defendants did not owe a duty of care to Plaintiff. Thus, the undersigned recommends Summary Judgment be granted in favor of Defendants as to Plaintiff's claims alleging negligence by Defendants (causes of action one and five of the Complaint).[5]

### B. Strict Liability and Breach of Warranty

 Plaintiff also alleges that Defendants are strictly liable for his injuries due to the "defective and unreasonably dangerous nature of Reglan/metoclopramide," (Dkt. No. 1 pp. 20) and that Defendants breached express and implied warranties because the Reglan/metoclopramide was not fit for its intended use (*id.*) To establish strict liability, the plaintiff must show the manufacturer's relationship to the product in question, the defect, the unreasonably dangerous condition of the product, and the existence of a proximate causal connection between the condition and the user's injuries or damage. *Clark v. Boeing Co.,* 395 So.2d 1226, 1229 (Fla.Dist. Ct.App.1981). Privity is not required between the ultimate consumer and the seller. *Amoroso v. Samuel Friedland Family Enters.,* 604 So.2d 827, 834 (Fla.Dist.Ct. App.1992). Contrarily, to recover for a breach of warranty, either express or implied, the plaintiff must be in privity of contract with the defendant. *T.W.M. v. American Med. Sys., Inc.,* 886 F.Supp. 842, 844 (N.D.Fla.1995) (*citing Kramer v. Piper Aircraft Corp.,* 520 So.2d 37 (Fla. 1988)); *see also Intergraph Corp. v. Stearman,* 555 So.2d 1282, 1283 (Fla.Dist.Ct. App.1990).

It is well established under Florida law and elsewhere that identification of the product that caused the harm as the one sold or manufactured by the defendant is an essential element of traditional tort law. *Pulte Home Corp. v. Ply Gem Indus., Inc.,* 804 F.Supp. 1471, 1484–85 (M.D.Fla.1992) (citations omitted). Requiring identification serves the important functions in tort law of assigning blame-worthiness to culpable parties, and also limits the scope of potential liability and thereby encourages useful activity that would otherwise be deterred if there were excessive exposure to liability. *Id.* at 1485 (citations omitted). "[W]ithout this element every manufacturer and vendor would become a virtual insurer of all like products on the market."

---

**5.** Even assuming Defendants' labels were misbranded and such a violation of federal law would constitute negligence *per se,* since the Court has concluded no duty was owed to Plaintiff the cause of action based on negligence *per se* (count five of the Complaint) cannot succeed.

*Id.* (*citing Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1483 (11th Cir.1985)). The element of product identification is so fundamental that only in a very limited set of circumstances are courts willing to apply an alternative theory of liability that circumvents this requirement. *Id.* (*citing Conley v. Boyle Drug Co.*, 570 So.2d 275, 280 (Fla.1990) which recognized market share liability in cases where there was an inherent inability to identify the manufacturer of the product that caused the injury).

■ Here, it is not in dispute that the product ingested by Plaintiff was not manufactured by Defendants. "In a products liability case it is necessary to present evidence that the defendant manufactured or produced the product that caused the injury." *Vecta Contract, Inc. v. Lynch*, 444 So.2d 1093, 1094 (Fla.Dist.Ct.App. 1984) (*citing Morton v. Abbott Labs.*, 538 F.Supp. 593 (M.D.Fla.1982)); *see also Liggett Group Inc. v. Engle*, 853 So.2d 434, 467 n. 46 (Fla.Dist.Ct.App.2003) ("It is aphoristic that a plaintiff cannot prevail on claims for negligence, breach of warranty or strict liability, unless the plaintiff establishes that the product which allegedly caused the plaintiff's injury was manufactured or sold by the defendant"). Based on the undisputed facts here, Plaintiff cannot hold Defendants strictly liable for injuries caused by a product that was manufactured by another. Thus, Plaintiff's claims against Defendants premised on strict liability should be dismissed.

■ Similarly, because it is not in dispute that the product ingested by Plaintiff was not manufactured by Defendants, they cannot be held liable for breach of warranty. Moreover, it is not alleged, nor has any evidence been offered, that would indicate Defendants were in a contractual or agency relationship with Plaintiff, or with the manufacturer that made the drug ingested by Plaintiff. Therefore, Plaintiff cannot show privity between himself and Defendants or between the Defendants and the manufacturer who made the drug Plaintiff ingested. As such, Plaintiff's claims against Defendants founded on breach of warranty must also fail and should be dismissed.

### 1. Liability as a Component Part Manufacturer

■ Plaintiff also proposes an alternative theory of products liability that Defendants can be held liable as a component manufacturer. A supplier of a component part may be liable for an injury caused by a product into which the component is integrated if (1) the component itself is defective and caused the harm, or (2) the component supplier substantially participated in integrating the component into the design of the product design and the integration of the component caused the product to be defective and that defect caused the harm. *Scheman–Gonzalez v. Saber Mfg. Co.*, 816 So.2d 1133, 1141 (Fla. Dist.Ct.App.2002) (*quoting* RESTATEMENT (THIRD) of TORTS: PRODS. LIAB. § 5 (1997)). Plaintiff asserts that the "product" here is not the drug alone, but the combination of the drug and the package insert/labeling information. Plaintiff alleges that Defendants were responsible for the inadequate contents of the package insert and labeling information, and thus can be held liable for the ultimate defective product made by the generic manufacturer.

The Court is not prepared to accept Plaintiff's theory that Defendants actually supplied a component part to the generic manufacturers in the form of package in-

sert/labeling information, simply because a generic manufacturer chose to use a label identical to that of Defendants. Defendants had no responsibility, financial incentive, or interest in providing the label that the generic manufacturers used with the product that Plaintiff ingested. Nor is there an allegation or evidence that Defendants entered into any kind of contract or agency relationship stipulating that a generic manufacturer would use Defendants' labeling information. Plaintiff asserts that generic manufacturers were required (at least initially) by federal law to use the labeling information submitted to the FDA by Defendants as the brand drug manufacturer. However, as set forth in an earlier Report and Recommendation (Dkt. No. 72), the undersigned does not agree that this is necessarily so. Each manufacturer is responsible for the contents of its label. *See Wyeth v. Levine,* —— U.S. ——, 129 S.Ct. 1187, 1202, 173 L.Ed.2d 51 (2009) ("Failure-to-warn actions, in particular, lend force to the [ ] premise that manufacturers ... bear primary responsibility for their drug labeling at all times"). Additionally, Plaintiff's own pleadings in this action undermine his contention now that the Defendants' labeling information was an indispensable component of the generic manufacturer's drug. *See* Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss pp. 8 ("[T]here can be no doubt that [the generic manufacturer] could have provided stronger warnings ... [and] altered its labeling").

Extending liability under Plaintiff's alternative theory of liability goes too far, and is not supported by the case law. With respect to Plaintiff's strict liability and breach of warranty allegations, it would also be improper for this Court to expand liability to manufacturers who do not have a direct relationship with the Plaintiff and who play no role in the production of the actual product that causes the Plaintiff's injury. To do so would unfairly render every manufacturer a virtual insurer of all like products on the market. Therefore, the undersigned recommends Summary Judgment be granted in favor of Defendants as to Plaintiff's claims alleging strict liability and breach of warranties (causes of action two and three of the Complaint).

### C. Negligent Misrepresentation and Fraud

"To prove negligent misrepresentation, it must be shown that (1) there was a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation." *Baggett v. Electricians Local 915 Credit Union,* 620 So.2d 784, 786 (Fla.Dist.Ct.App.1993). To succeed in a claim for negligent misrepresentation, the plaintiff must show the defendant owed it a duty of care. *ZP No. 54 Ltd. P'ship v. Fidelity and Deposit Co. of Md.,* 917 So.2d 368, 374 (Fla.Dist.Ct.App. 2005). If no duty exists, the claim must fail. *Id.*

As discussed in Part III–A, *supra*, the Court finds as a matter of law that Defendants did not owe a duty of care to Plaintiff. Thus, Plaintiff's claim for negligent misrepresentation fails, and the undersigned recommends Summary Judgment be granted in favor of Defendants as to Plaintiff's claims alleging negligent misrepresentation by Defendants under the fourth cause of action of the Complaint.

The elements of a fraudulent misrepresentation claim are essentially the same as those for negligent misrepresentation, except that, instead of proving that the representor reasonably should have known of the statement's falsity, the plaintiff must prove that the representor knew of the statement's falsity. *Rogers v. Cisco Sys., Inc.*, 268 F.Supp.2d 1305, 1312 (N.D.Fla. 2003).[6] Like an action for negligent misrepresentation, a defendant must owe a duty to the plaintiff to maintain an action for fraudulent misrepresentation. *See Behrman v. Allstate Ins. Co.*, 388 F.Supp.2d 1346, 1351 (S.D.Fla.2005) (stating that under Florida law omissions are not actionable as fraudulent misrepresentations unless the party omitting the information owes a duty of disclosure to the party receiving the information); *TransPetrol Ltd. v. Radulovic*, 764 So.2d 878, 879–80 (Fla.Dist.Ct.App.2000) ("a defendant's knowing concealment or non-disclosure of a material fact may only support an action for fraud where there is a duty to disclose" and such a duty arises due to a fiduciary or other relation of trust or confidence between the parties).

Here there is no confidential, contractual, or fiduciary relationship alleged between Defendants and Plaintiff, or between Defendants and the manufacturer of the drug used by Plaintiff. It is conceded Plaintiff did not use Defendants' product, and the Court has already found that Defendants lacked direct control over the information found in the label of the generic manufacturer's product. Because Defendants did not sell or manufacture the drug ingested by Plaintiff, they had no duty to disclose to Plaintiff; nor did they have a duty to disclose to the manufacturer responsible for making the drug ingested by Plaintiff. *See generally Sharp*, 2006 WL 515532 (holding brand manufacturers had no duty to warn customers of generic manufacturer in dismissing fraudulent and negligent misrepresentation claims) (*citing Foster*, 29 F.3d 165); *see also Mensing*, 588 F.3d at 613 (affirming summary judgment in favor of brand manufacturers as Mensing " 'did not purchase or use [the name brand defendants'] product, ... there was no direct relationship between them, let alone a fiduciary relationship that gave rise to a duty' ") (citation omitted). Thus, Plaintiff cannot maintain a claim for fraudulent misrepresentation or fraudulent concealment against Defendants. Therefore, the undersigned recommends Summary Judgment be granted in favor of Defendants as to Plaintiff's claims alleging fraud by Defendants under the fourth cause of action of the Complaint.

## IV. *Conclusion*

Viewing the facts of this case in the light most favorable to Plaintiff, the Court concludes as a matter of law that Defendants did not owe a duty of care to Plaintiff, nor was there a duty to ensure that the products made by its competitors were fit for their intended use. Thus, summary judgment in favor of the Defendants is proper as to all claims alleged in the Complaint.

For the foregoing reasons, it is **RECOMMENDED:**

(1) the Motion for Summary Judgment (Dkt. No. 44) filed by Defendants Wyeth,

---

**6.** To assert a valid cause of action under Florida law based on an allegation of fraud, the plaintiff must establish: (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation. *Johnson v. Davis*, 480 So.2d 625, 627 (Fla.1985).

Inc., Wyeth Pharmaceuticals Inc., and Schwarz Pharma, Inc. be **GRANTED;** and

(2) all claims against Defendants Wyeth, Inc., Wyeth Pharmaceuticals Inc., and Schwarz Pharma, Inc. be dismissed with prejudice.