Barbara METZ and Donald Metz, Plaintiffs,

v.

WYETH LLC, et al., Defendants.

Case No. 8:10–CV–2658–T–27AEP.

United States District Court, M.D. Florida, Tampa Division.

Nov. 18, 2011.

**1292**

Brent R. Bigger, Abrahamson Uiterwyk, Tampa, FL, Terrence J. Donahue, Jr., McGlynn Glisson Mouton, Baton Rouge, LA, William B. Curtis, Curtis Law Group, Dallas, TX, for Plaintiff.

Charles L. Casteel, Davis Graham & Stubbs LLP, Denver, CO, Hildy M. Sastre, Mihai M. Vrasmasu, Shook, Hardy & Bacon, LLP, Miami, FL, John W. Sinnott, Quentin F. Urquhart, Jr., Irwin Fritchie Urquhart & Moore LLC, New Orleans, LA, Paula A. Tuffin, Mayer Brown LLP, New York, NY, C. Howard Hunter, Ethen R. Shapiro, Hill Ward Henderson, PA, Tampa, FL, Richard A. Dean, Tucker, Ellis & West, LLP, Cleveland, OH, for Defendants.

### ORDER

ES D. WHITTEMORE, District Judge.

**BEFORE THE COURT** is Defendants Wyeth LLC and Schwarz Pharma, Inc.'s Motion for Summary Judgment (Dkt. 55). Upon consideration, Defendants Wyeth LLC and Schwarz Pharma, Inc.'s Motion for Summary Judgment (Dkt. 55) is **GRANTED**.

### Introduction

Plaintiffs, Barbara Metz and Donald Metz, filed this action against Wyeth LLC ("Wyeth"), Schwarz Pharma, Inc. ("Schwarz") (collectively, the **"Brand Defendants"**) and Actavis Elizabeth, LLC d/b/a Purepac Pharmaceuticals (**"Actavis"**) for injuries arising from the use of metoclopramide, marketed by Wyeth and Schwarz under the brand name Reglan. Actavis manufactured, marketed, and sold metoclopramide as a generic equivalent of Reglan.

The First Amended Complaint (Dkt. 83) asserts claims against the Brand Defendants for negligence (Count I), strict liability (Count II), breach of warranties (Count III), misrepresentation and fraud (Count IV), and negligence *per se* (Count V).[1]

### Discussion

The Brand Defendants move for summary judgment arguing that as a matter of Florida law they are not liable for Plaintiffs' injuries because Mrs. Meltz did not ingest a product manufactured by the Brand Defendants (*i.e.*, Reglan, as opposed to generic metoclopramide). Specifically, the Brand Defendants contend that Florida law prevents consumers from suing brand name manufacturers for injuries arising from the use of a generic equivalent. In response, Plaintiffs argue that because their "claims with regard to Brand Defendants do not relate to the composition or manufacture of the metoclopramide Mrs. Metz ingested, but rather focuses on the overt misrepresentations ... promulgated by Brand Defendants ...," they fall outside the scope of this general rule. Response to Motion for Summary Judgment (Dkt. 84), p. 1.[2]

---

1. Although the motion for summary judgment was filed prior to the filing of the First Amended Complaint, Plaintiffs have previously represented that any differences between the original complaint and amended pleading "do not affect the substance of the allegations against the brand defendants, and thus [do] not affect the legal basis of the existing Motion for Summary Judgment ...." Dkt. 81, p. 1.

2. At least with respect to their strict liability claim (Count II), the allegations in the Amended Complaint appear inconsistent with this statement. For example, Plaintiffs allege on several occasions that Reglan was unrea-

For purposes of this motion, the material facts are not in dispute. That is, it is undisputed that Mrs. Meltz ingested metoclopramide produced by generic manufacturers—not brand name Reglan manufactured by the Brand Defendants. *See* Plaintiffs' Responses to Defendant Wyeth LLC's Request for Admissions (Dkt. 55–3), 111 2–4. Thus, the sole issue before the Court is whether the Brand Defendants are entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The vast majority of courts, in Florida and elsewhere, that have addressed the issue now before the Court have consistently held that consumers may not bring claims for negligence, fraud, strict liability, misrepresentation, or breach of warranty against a brand name pharmaceutical manufacturer when the consumers only ingested generic versions of the drug manufactured by third parties. *See, e.g., Bell v. Pfizer Inc.*, No. 5:10CV00101 BSM, 2011 WL 904161 (E.D.Ark. March 16, 2011); *Howe v. Wyeth, Inc.*, No. 8:09–CV–610–T–17AEP, 2010 WL 1708857 (M.D.Fla. April 26, 2010); *Levine v. Wyeth, Inc.*, 684 F.Supp.2d 1338 (M.D.Fla.2010); *Dietrich v. Wyeth, Inc.*, No. 50–2009–CA–021586 XXX MB, 2009 WL 4924722 (Fla.Cir.Ct. Dec. 21, 2009); *Sharp v. Leichus*, No.2004–CA–0642, 2006 WL 515532 (Fla.Cir.Ct. Feb. 17, 2006), *aff' dper curiam*, 952 So.2d 555 (Fla. 1st DCA 2007) (citing *Foster*); *see also Smith v. Wyeth, Inc.*, 657 F.3d 420, 423–24 (6th Cir.2011) (holding that brand name manufacturer owes no duty of care to individuals who have never taken the drug actually manufactured by that company).[3] *But see Kellogg v. Wyeth*, 762 F.Supp.2d 694 (D.Vt.2010) (holding a name-brand prescription drug manufacturer's duty to use care when providing product warnings extends to patients whose prescriptions are filled with the generic version of the drug); *Conte v. Wyeth, Inc.*, 168 Cal.App.4th 89, 85 Cal.Rptr.3d 299 (2008) (same).

Plaintiffs attempt to overcome the nearly unanimous adverse precedent by arguing that the Supreme Court's decision in *PLIVA, Inc. v. Mensing*, —— U.S. ——, 131 S.Ct. 2567, 180 L.Ed.2d 580 (2011),[4] warrants a change in how Florida law is applied to producers of brand name pharmaceuticals. The thrust of Plaintiffs' argument is that the Fourth Circuit's holding in the seminal case of *Foster v. American Home Products Corp.*, 29 F.3d 165 (4th Cir.1994), was based on the proposition (discussed in *dicta*) that consumers could recover from generic manufacturers for misrepresentations relating to their products. *Id.* at 170. While it is true that this proposition was rejected by the Supreme Court in *Mensing*, this proposition was by no means central to the ultimate holding in *Foster*. The Fourth Circuit's holding in *Foster* was based on its interpretation of Maryland law and the general rule that

sonably defective in design and unreasonably dangerous when it entered into the stream of commerce, *see, e.g.,* Amended Complaint, **Tij** 66, 97, 98(a) 102–04. In this regard, even the principal case cited by Plaintiffs recognizes that the strict liability claim must fail as to the Brand Defendants. See *Conte v. Wyeth, Inc.*, 168 Cal.App.4th 89, 85 Cal.Rptr.3d 299, 309–11 (2008).

**3.** For additional supporting cases, *see* Defendants Wyeth LLC and Schwarz Pharma,

Inc.'s Motion for Summary Judgment (Mt. 55), pp. 13–15 n. 5 & 6.

**4.** In *Mensing*, the Court held that state law claims against generic manufacturers based on an alleged failure to warn of dangers associated with a drug were preempted by federal law because generic manufacturers are required to use the same label as the branded drug and are not at liberty to communicate information inconsistent with that label. *Id* at 2581–82.

one manufacturer cannot be held liable on a negligent misrepresentation theory for injuries caused by another manufacturer. *Id.* In fact, the *Foster* court held that, irrespective of whether consumers could recover from generic drug manufacturers, a brand name manufacturer simply had no duty of care to individual consumers that did not use the named brand manufacturer's product. *Id.* at 171.[5]

The Court recognizes that, like *Foster*, many of the *pre-Mensing* decisions in Florida and elsewhere apparently assumed that consumers would have a remedy against generic drug manufacturers. This recognition, however, does not compel the conclusion that *Mensing* changed Florida law. *See Gross v. Pfizer, Inc.*, No. 8:10–cv–00110–AW, 2011 WL 4005266, at *2 (D.Md. Sept. 7, 2011) (the "holding in *Mensing* neither created nor abrogated any duty under Maryland law with regard to brand-name manufacturers"). Tellingly, the Supreme Court in *Mensing* appeared to contemplate that consumers of generic drugs may be without a remedy when it noted "the unfortunate hand that federal drug regulation has dealt [consumers of generic drugs]." *Id.* at 2581; *see id.* at 2592 (Sotomayor, J., dissenting) (noting that under the majority's decision, a consumer of a generic drug "now has no right to sue").[6] Even assuming, without deciding, that sound policy reasons exist for broadening the scope of brand name pharmaceutical manufacturers' liability in light of *Mensing*,[7] that is a matter best addressed by the Florida Legislature or the Supreme Court of Florida. *See Pressley v. Sears–Roebuck and Co.*, 738 F.2d 1222, 1224 (11th Cir.1984) (holding that federal courts sitting in diversity are absolutely bound by decisions of state courts and should not independently anticipate a change in state law); *see also Solomon v. Walgreen Co.*, 975 F.2d 1086, 1089 (5th Cir.1992) *(per curiam)* (noting that a federal court sitting in diversity must apply the state law as it currently exists, and

**5.** The Fourth Circuit expressly rejected the foreseeability analysis Plaintiffs propose in this case, noting that "to impose a duty in the circumstances of this case would be to stretch the concept of foreseeability too far." *Id.* at 171.

**6.** In fact, on remand, the Eight Circuit reinstated its holding that the plaintiff's claims against the brand name drug manufacturers were barred under Minnesota law. *See Mensing v. Wyeth, Inc.*, 658 F.3d 867 (8th Cir. 2011); *see also Morris v. Wyeth, Inc.*, No. 3:09–CV–854, 2011 WL 4975317 (W.D.La. Oct. 19, 2011) (denying motion for relief from judgment entered in favor of brand name drug manufacturers based on the *Mensing* decision, noting that while the plaintiff "will certainly view the denial of her motion for relief from judgment as inequitable, the *Mensing* decision and [Louisiana law] have made it clear that parties injured by generic drugs have no recourse against brand name manufacturers under Louisiana's failure to warn law"); *Dietrich v. Wyeth, Inc.*, No. 50–2009–CA–021586 XXX MB, 2009 WL 4924722 (Fla. Cir.Ct. Dec. 21, 2009) ("whether or not [the

generic manufacturers] possess valid defenses has no bearing on the fundamental point that Plaintiffs' claims against Wyeth and Schwarz lack any basis or support under Florida law").

**7.** The policy concerns implicated by a potential expansion of the scope of brand name manufacturers' liability are not nearly as one sided as Plaintiffs suggest in their opposition memorandum. *Compare* Lars Noah, *Adding Insult to Injury: Paying for Harms Caused by a Competitor's Copycat Product*, 45 Tort Trial & Ins. Prac. L.J. 637 (Spring–Summer 2010) (arguing against expanded scope of liability) *with* Martin A. Ramey, *Conte v. Wyeth Caveat Innovator and the Case for Perpetual Liability in Drug Labeling*, 4 Pitt. J. Envtl Pub. Health L. 73 (Spring 2010) (arguing in favor of expended scope of liability). *See also* Sarah C. Duncan, *Allocating Liability for Deficient Warnings on Generic Drugs: A Prescription for Change*, 13 Vand. J. Ent. & Tech. L. 185 (Fall 2010) (offering alternatives for redressing individuals harmed by prescription drugs).

may not change that law or adopt innovative theories of recovery).

### *Conclusion*

 Under the undisputed facts of this case, it is clear that Plaintiffs' claims are barred by long standing principles of Florida law. *See Levine v. Wyeth, Inc.,* 684 F.Supp.2d 1338, 1348 (M.D.Fla.2010); *see also Conley v. Boyle Drug Co.,* 570 So.2d 275, 286 (Fla.1990) ("[a]n individual defendant may exculpate itself from liability by proving by a preponderance of the evidence that it did not produce or market the type of [pharmaceutical] taken by the plaintiff's mother"); *Liggett Group Inc. v. Engle,* 853 So.2d 434, 466 n. 44 (Fla. 3d DCA 2003) ("[i]t is aphoristic that a plaintiff cannot prevail on claims for negligence, breach of warranty or strict liability, unless the plaintiff establishes that the product which allegedly caused the plaintiff's injury was manufactured or sold by the defendant"), *aff'd on this ground, rev 'don other grounds,* 945 So.2d 1246 (Fla.2006).[8] This Court is not free to disregard well-established Florida precedent in a manner that would dramatically expand Florida tort and product liability law. *See, e.g., Virgilio v. Ryland Group, Inc.,* 695 F.Supp.2d 1276, 1278 n. 2 (M.D.Fla.2010) ("Sitting in diversity, this court must follow state substantive law as it has been announced by the state's highest court and is generally bound by the decisions of the state's intermediate appellate courts."); *Kelly v. Palmer, Reifler, & Associates, P.A.,* 681 F.Supp.2d 1356, 1370 (S.D.Fla. 2010) (noting federal district courts in Florida "are bound by Florida Supreme Court precedent on matters of Florida law").

Accordingly, it is **ORDERED AND ADJUDGED** that Defendants Wyeth LLC and Schwarz Pharma, Inc.'s Motion for Summary Judgment (Dkt. 55) is **GRANTED.** The Clerk is directed to enter judgment in favor of Defendants Wyeth LLC and Schwarz Pharma, Inc.

### R. W., Plaintiff,

v.

---

8. For this reason, Mr. Meltz's loss of consortium claim also fails as a matter of law. *See Gates v. Foley,* 247 So.2d 40, 45 (Fla.1971) (a spouse "may recover [on a loss of consortium claim] only if her husband has a cause of action against the same defendant").