SALTER, J.
 

 ON MOTION FOR REHEARING
 

 Upon consideration of the motion for rehearing filed on behalf of appellee, Vector Group Ltd. (“Vector”), the Court grants the motion in part, withdraws its previous opinion issued September 28, 2011, and substitutes the opinion which follows. The motions for rehearing filed by appellees other than Vector, and those portions of Vector’s motion for rehearing not addressed in this opinion, are denied.
 

 A personal representative for the estate of her late husband appeals a final summary judgment in favor of three tobacco company defendants
 
 [1]
 
 in this Engle-proge-ny
 
 [2]
 
 case. It is undisputed that the decedent, Mr. Rey, never smoked cigarettes manufactured by those three defendants, and thus that summary judgment was appropriate with respect to the traditional product liability claims against each company.
 

 In this appeal, we are asked to review the trial court’s determination that summary judgment in favor of those three companies was also appropriate under
 
 En-gle
 
 on the “civil conspiracy to fraudulently conceal” claim asserted by Mrs. Rey against all defendants. We reverse the final summary judgment in favor of the three tobacco companies as to that claim and only that claim (Count IV of the Amended Complaint), based on our reconciliation of the holdings by this Court and our supreme court in
 
 Engle.
 

 I.
 
 Preclusive Findings by the Florida Supreme Court
 

 We begin — and ultimately end — with these findings by our supreme court in
 
 Engle:
 

 We approve the Phase I findings for the class as to Questions 1 (that smoking cigarettes causes aortic aneurysm, bladder cancer, cerebrovascular disease, cervical cancer, chronic obstructive pulmonary disease, coronary heart disease, esophageal cancer, kidney cancer, laryngeal cancer, lung cancer (specifically, ad-enocarcinoma, large cell carcinoma, small cell carcinoma, and squamous cell carcinoma), complications of pregnancy, oral cavity/tongue cancer, pancreatic cancer, peripheral vascular disease, pharyngeal cancer, and stomach cancer), 2 (that nicotine in cigarettes is addictive), 3 (that the defendants placed cigarettes on the market that were defective and unreasonably dangerous), 4(a) (that the defendants concealed or omitted material information not otherwise known or available knowing that the material was false or misleading or failed to disclose a material fact concerning the health effects or addictive nature of smoking cigarettes or both), 5(a) (that the defendants agreed to conceal or omit information regarding the health effects of cigarettes or their addictive nature with the intention that smokers and the public would rely on this information to their detriment), 6 (that all of the defendants sold or supplied cigarettes that were defective), (7) (that all of the defendants sold or supplied cigarettes that, at the time of sale or supply, did not conform to representations of fact made by
 
 *380
 
 said defendants), and 8 (that all of the defendants were negligent). Therefore, these findings in favor of the Engle Class can stand.
 

 Engle,
 
 945 So.2d at 1276-77 (emphasis added).
 

 There is no dispute for this purpose that Mr. Rey was a member of the
 
 Engle
 
 Class; that he was addicted to, purchased, and smoked cigarettes designed, manufactured, advertised, and marketed by some of the defendants (but not including the three defendants/appellees in the case at hand); and that he died of lung cancer in 1996. Additionally, Lorillard Tobacco and Lig-gett Group were “defendants” for purposes of the preclusive
 
 Engle
 
 findings.
 
 [3]
 
 On the basis of those facts and prior findings, Mrs. Rey maintains that brand usage is not a required element of her civil conspiracy/concealment claim.
 

 The three appellees assert that other language in the original 2000
 
 Engle
 
 Class representative verdict and judgment in the trial court, this Court’s 2003 reversal of that verdict and judgment, and the 2006
 
 Engle
 
 decision by our supreme court, require an affirmance of the final summary judgment in their favor against Mrs. Rey. They argue that collectively those three prior rulings preclude a conspiracy/concealment claim against any defendants that did not actually provide cigarettes to the class member/plaintiff.
 

 II.
 
 Conspiracy Versus Traditional Product Liability Claims
 

 The three class representatives in the original
 
 Engle
 
 trials were Mary Farnan, Frank Amodeo, and the estate of Angie Della Vecchia. Each asserted a civil conspiracy/concealment claim against all defendants (which included Lorillard Tobacco and Liggett Group, but not Vector). In special interrogatory verdicts in 1999 and 2000, the jury found in favor of each representative plaintiff, and against all defendants, on the plaintiffs’ civil conspiracy/concealment claims.
 

 On appeal, this Court set aside all of the jury’s findings against manufacturer defendant Liggett Group because, among other reasons, “none of the class representatives purchased or smoked Lig-gett/Brooke cigarettes.”
 
 Liggett Grp., Inc. v. Engle,
 
 853 So.2d 434, 466 (Fla. 3d DCA 2003),
 
 aff'd in part and quashed in part,
 
 945 So.2d 1246. Although that ruling reversed the jury’s civil conspiracy/concealment findings as well as those pertaining to the product liability claims by the class representatives, this Court narrowed its “brand usage” requirement to the product liability claims, explaining in a footnote:
 

 It is aphoristic that a plaintiff cannot prevail on claims for negligence, breach of warranty or strict liability, unless the plaintiff establishes that the product which allegedly caused the plaintiffs injury was manufactured or sold by the defendant.
 
 See Mahl v. Dade Pipe and Plumbing Supply Co., Inc.,
 
 546 So.2d 740 (Fla. 3d DCA 1989). Here, it is undisputed that the Liggett defendants did not manufacture or sell any of the products that allegedly caused injury to the individual plaintiff representatives.
 

 Id.
 
 at 466 n. 46.
 

 The three manufacturer appellees in this case argue two inferences to support their
 
 *381
 
 “brand usage” limitation. First, they assert that the only other possible reason for this Court’s reversal of the civil conspiracy/concealment claim in 2008 (zero percent comparative fault findings in favor of Lig-gett regarding the product liability claims) did not apply to the conspiracy count, such that the conspiracy verdict must have been reversed because the class representatives did not use the Liggett brand. Second, they point to the Florida Supreme Court’s approval of this Court’s “conclusion that a directed verdict should be granted in favor of Liggett and Brooke” as to class representatives Farnan and Della Vecchia,
 
 [4]
 
 with no carveout for the civil conspiracy/concealment verdict against those defendants.
 
 See Engle,
 
 945 So.2d at 1255.
 

 Such inferences are unwarranted, however. First, this Court’s opinion also reversed all counts as to all defendants because of “the prejudicial impact of the errors at trial which, combined with the improper conduct of counsel and the trial plan, compels reversal as to
 
 all
 
 the defendants.”
 
 Liggett Grp., Inc.,
 
 858 So.2d at 467. Second, in reinstating the total money damage awards to Farnan and Della Vecchia in 2006 as to all defendants other than Liggett and Brooke, the Florida Supreme Court did not expressly address the status of the civil conspiracy/concealment claims against those defendants. On rehearing, the appellees assert that Farnan and Della Vecchia asked the Florida Supreme Court to reinstate the awards against Liggett or Brooke on the civil conspiracy/concealment claims, and that the supreme court’s refusal to explicitly grant such relief must be interpreted to preclude the assertion of a civil conspiracy/concealment claim by any Engle-progeny plaintiff against any defendant other than a manufacturer as to which brand usage is established by the plaintiff.
 

 But, in
 
 Engle,
 
 the Florida Supreme Court did not impose a “brand usage” condition upon claims for civil conspiracy/concealment. To the contrary,
 
 Engle
 
 approved, and held binding in future
 
 Engle
 
 Class lawsuits, the findings that all the defendants in that case concealed (or omitted) material information not otherwise known or available and that all defendants agreed to that concealment or omission. “All defendants” logically does not mean “only those defendants which manufactured the cigarettes used by the plaintiff.” No Florida appellate decision “is authority on any question not raised and considered, although it may be involved in the facts of the case.”
 
 Benson v. Norwegian Cruise Line Ltd.,
 
 859 So.2d 1213, 1217 (Fla. 3d DCA 2003) (quoting
 
 State ex rel. Helseth v. Du Bose,
 
 99 Fla. 812, 128 So. 4, 6 (1930)).
 

 Our analysis is based also on our decisions regarding civil conspiracy claims generally. In
 
 Charles v. Florida Foreclosure Placement Center, LLC,
 
 988 So.2d 1157 (Fla. 3d DCA 2008), we examined the elements of a claim for civil conspiracy: “(a) an agreement between two or more parties, (b) to do an unlawful act or do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy.”
 
 Id.
 
 at 1159-60 (quoting
 
 Raimi v. Furlong,
 
 702 So.2d 1273, 1284 (Fla. 3d DCA 1997)).
 

 The alleged joint and several liability of the three appellees in this case does not turn on Mr. Rey’s use of those appellees’ cigarettes. The essential findings for the civil conspiracy/eoncealment claim have
 
 *382
 
 been approved as to Mr. Rey and other members of the
 
 Engle
 
 Class as to Loril-lard Tobacco and Liggett Group. Those manufacturers may not have supplied the cigarettes used by Mr. Rey, but they “concealed or omitted material information not otherwise known or available knowing that the material was false or misleading or failed to disclose a material fact concerning the health effects or addictive nature of smoking cigarettes or both,” and they “agreed to conceal or omit information regarding the health effects of cigarettes or their addictive nature.”
 
 Engle,
 
 945 So.2d at 1277. In short, the preclusive
 
 Engle
 
 findings establish the agreement among all
 
 Engle
 
 defendants and the unlawful acts committed (or unlawful means employed) by each of them. The findings also extend to the causation between the acts of the co-conspirator
 
 Engle
 
 defendants and the injuries suffered by Mr. Rey and his survivors.
 

 As to Vector, such findings may or may not be established at trial or disposed of via summary judgment. The existing record does not support a summary judgment in favor of Vector based on “brand usage” alone; to obtain a summary judgment on the civil conspiracy/concealment claim, Vector will need to satisfy the requirements of Florida Rule of Civil Procedure 1.510 and to establish that there is no genuine issue of material fact regarding that claim.
 

 Were we to hold otherwise, arguably culpable non-manufacturer defendants also could not be held liable for tobacco-related injuries — defendants such as the Council for Tobacco Research and the Tobacco Institute — for failure to satisfy the purported “brand usage” requirement. We discern no such intention or ruling in
 
 Engle.
 

 Finally, the appellees urge us to uphold the summary judgments on the basis of
 
 Conley v. Boyle Drug Co.,
 
 570 So.2d 275 (Fla.1990), a products liability claim involving the drug diethylstilbestrol (DES). That case pertains to products liability claims, including a fraud claim, against eleven defendants who manufactured and marketed DES, and the question of whether market-share and other theories of liability should be applied. The case does not, however, involve claims of conspiracy to conceal material facts among a group of manufacturer defendants.
 

 The Supreme Court of Florida’s rejection of the “concert of action” theory of liability as applied to the manufacturers of DES approved the district court’s analysis and rejection of that theory,
 
 Conley v. Boyle Drug Co.,
 
 477 So.2d 600 (Fla. 4th DCA 1985). The elements of the “concert of action” theory originate from the Restatement of Torts § 876 and are distinguishable from the “conspiracy to conceal” claim involved in the case at hand and in
 
 Engle.
 
 The “concert of action” theory may extend to tacit understandings among a group of manufacturers, to “conscious parallel activities,” and to “substantial assistance or encouragement,” and was appropriately rejected because it could “render virtually any manufacturer liable for the defective products of an entire industry, even if it could be demonstrated that the product which caused the injury was not made by the defendant.”
 
 Conley,
 
 477 So.2d at 603 (quoting
 
 Sindell v. Abbott Labs.,
 
 26 Cal.3d 588, 168 Cal.Rptr. 132, 607 P.2d 924, 938 (1980)).
 

 Moreover,
 
 Conley
 
 was decided by our supreme court sixteen years before its decision in
 
 Engle
 
 approving the jury’s findings as to concealment of material information and an agreement among the tobacco defendants to do so. We doubt that the Supreme Court of Florida would have approved those findings had it believed that
 
 Conley
 
 made the findings irrelevant in further proceedings. We therefore reject the appellees’ argument that liability under
 
 *383
 

 Engle
 
 for “conspiracy to conceal” was somehow abrogated by the earlier rejection of “concert of action” DES liability in
 
 Conley.
 

 III.
 
 Conclusion
 

 The law of civil conspiracy is striking in its extension of liability to a co-conspirator which may not have caused any direct injury to the claimant. These principles have their origins in the policy that an entire group of conspirators acting collectively to achieve an unlawful goal — including consumer fraud — should be jointly and severally liable for the acts of all participants in the scheme.
 

 Engle
 
 does not hold that traditional product liability theories are the only claims that may go forward against tobacco companies and their collectively-supported research or industry groups, or that all smoking-related claims may only proceed against those defendants which manufactured the specific brands consumed by a particular plaintiff. To the contrary,
 
 Engle
 
 has reaffirmed that existing civil conspiracy/fraudulent concealment claims are available to Engle-progeny claimants. For these reasons, we reverse the final summary judgment against Mrs. Rey as to Count IV (“civil conspiracy— fraud by concealment”) only, and we affirm as to all other claims against these three appellees. As noted, our opinion does not decide Vector’s separate motion for summary judgment on other grounds, or extend the preclusive
 
 Engle
 
 findings to Vector.
 

 Reversed in part, affirmed in part, and remanded for further proceedings in accordance with this opinion.
 

 [1]
 

 . Lorillard Tobacco Company, Liggett Group LLC, and Vector.
 

 [2]
 

 . Individual cases filed pursuant to
 
 Engle v. Liggett Group, Inc.,
 
 945 So.2d 1246, 1277 (Fla.2006).
 

 [3]
 

 .
 
 Engle,
 
 945 So.2d at 1256 n. 3. Vector was not a defendant in
 
 Engle
 
 (though mistakenly identified as such in the appellant’s initial brief), and this opinion is without prejudice to the trial court’s ultimate disposition of Vector’s separate motion for summary judgment on grounds other than brand usage. Vector also asserts that it is a holding company rather than a cigarette manufacturer. The extent, if any, of Vector's participation in the concealment, material omissions, and conspiracy to conceal facts as adjudicated with respect to the
 
 Engle
 
 defendants has not yet been determined by the trial court in the case at hand.
 

 [4]
 

 . All of class representative Amodeo’s claims were reversed by this Court — and the Florida Supreme Court affirmed the reversal — based on the statute of limitations.
 
 Engle,
 
 945 So.2d at 1276;
 
 Liggett Grp., Inc.,
 
 853 So.2d at 453-54 n. 23.