# Third District Court of Appeal

## State of Florida

Opinion filed September 6, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-2198
Lower Tribunal No. 16-3753
_____

**MVW Management, LLC,**
Appellant,

vs.

**Regalia Beach Developers LLC, etc., et al.,**
Appellees.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Michael A. Hanzman, Judge.

Leon Cosgrove, LLC, and Scott B. Cosgrove and Ellen Ross Belfer; McDermott Will & Emery LLP, and Marcos D. Jimenez, for appellant.

Bilzin Sumberg Baena Price & Axelrod, LLP, and Michael N. Kreitzer and James J. Ward, for appellees.

Before FERNANDEZ, LOGUE, and SCALES, JJ.

LOGUE, J.

## ON APPELLANT'S MOTION FOR REQUEST FOR ISSUANCE OF WRITTEN OPINION, CERTIFICATION, AND CLARIFICATION

Appellant MVW Management, LLC, has filed a motion for a written opinion, for certification, and for clarification. We deny MVW's request for certification. We grant the motion for clarification, withdraw the previously issued opinion, and substitute the following opinion in its stead.

MVW appeals a nonfinal order denying its claim for advancement of legal fees and costs from plaintiff Regalia Beach Developers, LLC. For the reasons stated below, we affirm.

## Background

Regalia Beach Developers, LLC (Regalia), is a single purpose legal entity that owns the Regalia Beach Condominium. Louis Montello was elected and serves as manager of Regalia pursuant to the company's operating agreement. Montello is also the principal of MVW Management, LLC, a company that Regalia hired to manage the Regalia Beach Condominium pursuant to a management agreement between Regalia and MVW.

Regalia filed an action against Montello and MVW for mismanagement. Although this case involves first-party litigation, in which one party to a contract sues another party to the contract, both Montello and MVW sought advancement of their litigation expenses pursuant to the indemnity provisions of the parties'

operating and management agreements. The trial court granted Montello advancement under the operating agreement, but it denied MVW advancement under both the operating and management agreements. MVW filed this interlocutory appeal. We have jurisdiction. Fla. R. App. P. 9.130(a)(3)(C)(ii).

## Analysis

**I.     MVW is not entitled to advancement under Regalia's operating agreement.**

MVW claims it is entitled to advancement of its litigation expenses based on Regalia's operating agreement.  We conclude MVW is not entitled to advancement because MVW does not qualify as a "Covered Person" under the operating agreement.

Regalia's operating agreement includes exculpation and indemnification provisions that apply to first-party litigation like the litigation here between Regalia and MVW.[1]  Further, the "liability, exculpation and indemnification" section of the contract expressly provides for advancement of litigation expenses. Specifically, section 13.4 of the operating agreement states the following:

> Expenses.  To the fullest extent permitted by applicable law, expenses (including legal fees) incurred by a Covered Person in defending any claim, demand, action, suit or proceeding shall, from time to time, be advanced

---

[1] In this regard, Regalia's operating agreement provides in pertinent part that "[n]o Covered Person shall be liable to the Company or any other Covered Person for any loss . . . damage or claim incurred by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company."

3

by the Company prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Covered Person to repay such amount if it shall be determined that the Covered Person is not entitled to be indemnified as authorized in Section 13.3 hereof.

Here, the trial court determined Montello was entitled to advancement because of his status as manager under Regalia's operating agreement.[2]  But that determination does not mean MVW is also entitled to advancement.

As noted above, the relevant provisions of the operating agreement apply only to "Covered Persons," a defined term.  "Covered Person" is defined by the operating agreement as:

> a Member; any Affiliate of a Member; any Manager; any officers, directors, shareholders, partners, employees, representatives or agents of a Member, any Affiliate of a Member; any employee or agent of the Company or its Affiliates; any Tax Matters Representative of the Company; or an officer of the Company that is not an employee.

MVW makes two arguments why it qualifies as a "Covered Person." First, MVQ argues that it qualifies as a "Manager."  Although MVW is a manager of the construction, sales, and operations of the condominium under the separate management agreement, it is not a manager of Regalia under Regalia's operating agreement.  In fact, Regalia's operating agreement defines "Manager" as "any Person as described in Article 6 and elected by the Members in accordance with

[2] Regalia did not cross-appeal this determination.

4

the provisions of Article 7." Article 6 of the operating agreement states that "the Manager may be designated, appointed, elected, removed, or replaced by the vote, approval, or consent of a Majority Interest of the members, and holds office until a successor has been elected and qualified or the Manager sooner resigns or is removed." Section 6.2, titled "Initial Manager," states that "[t]he Members hereby designate Louis R. Montello to serve as Manager for the Company." And article 7 provides for an annual meeting "for the election of the Manager." The plain language of the operating agreement shows that Montello was designated as "Manager"; MVW was not.

MVW next argues that it is a "Covered Person" under Regalia's operating agreement because it is an agent of the manager, Montello, and therefore qualifies as "any employee or agent of the Company or its Affiliates." We do not find this argument persuasive.

If the drafters of Regalia's operating agreement intended to include agents of the Manager within the definition of "Covered Persons," they could have done so explicitly. But the absence of any reference to the Manager's agents in the definition of "Covered Person" leads us to conclude that the drafters did not intend to give the Manager's agents the contractual status of "Covered Persons."

Moreover, the drafters of Regalia's operating agreement expressly included both the terms "Manager" and "Affiliate" in the definition of "Covered Person."

5

These separated terms suggest that the drafters did not intend the term "Manager" to be a subset of the term "Affiliate." In other words, if "Manager" were subsumed within "Affiliate," there would be no need to separately list "Manager." MVW's interpretation would make the inclusion of the term "Manager" in the definition redundant and unnecessary, contrary to the basic rule of contract interpretation that "[c]ourts must 'construe contracts in such a way as to give reasonable meaning to all provisions,' rather than leaving part of the contract useless." Publix Super Markets, Inc. v. Wilder Corp. of Delaware, 876 So. 2d 652, 654 (Fla. 2d DCA 2004) (quoting Hardwick Props., Inc. v. Newbern, 711 So. 2d 35, 40 (Fla. 1st DCA 1998)).

Accordingly, we conclude that MVW does not qualify as a "Covered Person" under Regalia's operating agreement, and therefore it is not entitled to advancement of litigation fees and costs.

## II. MVW is not entitled to advancement under the management agreement.

MVW also argues that it is entitled to advancement of its litigation expenses based on the management agreement between MVW and Regalia. Indeed, the management agreement provides that "[e]xpenses (including attorneys' fees, court costs, judgments, fines, amounts paid in settlement and other payments) incurred by Manager [MVW] . . . shall be paid by Owner [Regalia] in advance of the final disposition of such action, suit or proceeding." Notwithstanding this express

6

provision, we conclude that the trial court properly denied MVW's request for advancement based on the management agreement because the provision does not apply to a first-party litigation case like this between the two parties to the contract.

The right to be indemnified for litigation expenses and the right to advancement of litigation expenses are related but different rights. Indemnification is the right to be paid litigation expenses at the end of a lawsuit, usually based on meeting several conditions, including successfully defeating a claim or showing good faith. See, e.g., § 607.0850(3), Fla. Stat. (2016). In contrast, advancement is the right to immediate, interim relief from the personal out-of-pocket expenses inevitably involved in the investigations and legal proceedings into which officers and directors are often drawn.

Advancement is in the nature of a loan: litigation expenses are paid as incurred, subject to a statutory or contractual requirement to pay back the advance if the officer or director's defense is unsuccessful or other conditions are meet. See, e.g., § 607.0850(6); In re Adelphia Commc'ns Corp., 323 B.R. 345, 375 (Bankr. S.D.N.Y. 2005) (describing advancement as "a species of loan . . . to an officer or director pending later determination of that person's right to receive and retain indemnification," and noting that a "corporation maintains the right to be repaid . . . if the individual is ultimately shown not to be entitled to indemnification"). It is well recognized that the rights to indemnification and advancement "encourage

well-qualified persons to serve as directors and officers of . . . corporations and, in that capacity, to be willing to commit their corporations, after the exercise of good faith and care, to risky transactions that promise a lucrative economic return." Fasciana v. Elec. Data Sys. Corp., 829 A.2d 160, 170 (Del. Ch. 2003).

Although indemnity and advancement are separate rights, the right to advancement in this case is directly tied to the right to indemnification. The management agreement provides for advancement of litigation expenses only for defending any proceeding "described in section 5.2(a) above." Section 5.2(a), the indemnification provision, states the following:

> Owner agrees to defend, indemnify and hold harmless Manager and each of Manager's members, officers, directors, employees and agents (collectively, including Manager, the "Manager Indemnified Parties" and each individually an "Indemnified Manager Party"), from, against and in respect of any and all demands, claims, actions or causes of action, losses, liabilities, obligations, penalties, damages, assessments, deficiencies, taxes, judgments, costs and expenses, including, without limitation, interest, penalties and reasonable attorneys' fees and expenses incurred by any such Manager Indemnified Party in connection with the defense of any action, suit or other proceeding (including any administrative proceeding) (collectively, the "Indemnified Amounts"), as incurred, asserted against, imposed upon or paid, incurred or suffered by Manager or any Indemnified Manager Party as a result of the services performed by Manager pursuant to this Agreement provided that Manager or such Manager Indemnified Party acted in good faith and in a manner he, she or it reasonably believed to be in or not opposed to the best interests of Owner with respect to the Project,

8

and, with respect to any criminal action or proceeding, had no reasonable cause to believe his, her or its conduct was unlawful.

The language of this indemnification provision does not indicate whether it was intended to apply to first-party claims like the one Regalia brought against MVW. This is the fundamental problem with MVW's argument.

Generally in Florida, indemnity provisions apply only to third-party claims. Florida law disfavors contracts that shift the cost of a party's misconduct from the perpetrator to the injured party "because they relieve one party of the obligation to use due care and shift the risk of injury to the party who is probably least equipped to take the necessary precautions to avoid injury and bear the risk of loss." Sanislo v. Give Kids the World, Inc., 157 So. 3d 256, 260 (Fla. 2015). Indeed, "indemnification agreements can sometimes produce the same result as an exculpatory provision by shifting responsibility for the payment of damages back to the injured party." Id. at 265. For this reason, and as the trial court properly cautioned here, the view that general indemnity language automatically includes indemnity for first-party claims would "permit a garden variety indemnity clause to be used to exculpate a contracting party from liability to the other party to the agreement." Order, Regalia Beach Dev. LLC v. MVW Mgmt. LLC, Case no. 16-3753 CA 22 (Fla. 11th Cir. June 30, 2016) (Hanzman, J.).

9

Exculpatory clauses are enforceable if, and only if, "the wording [is] so clear and understandable that an ordinary and knowledgeable person will know what he or she is contracting away." Sanislo, 157 So. 3d at 260-61. Because "indemnification agreements can sometimes produce the same result as an exculpatory provision by shifting responsibility for the payment of damages back to the injured party," id. at 265, a similar rule applies in Florida regarding whether indemnity provisions apply to first-party actions.

Contracts for direct indemnity will not be inferred; for indemnity to apply against first-party claims, the indemnification provision must clearly indicate that it applies to the acts of the other party to the contract. An indemnification provision that is silent or unclear whether it applies to first-party claims will normally be interpreted to apply only to third-party claims. For example, a tenant's agreement to indemnify the landlord against "any and all claims" does not clearly and unequivocally express an intent to include claims by the tenant that result exclusively from the negligence of the landlord. Univ. Plaza Shopping Ctr., Inc. v. Stewart, 272 So. 2d 507, 511 (Fla. 1973).

This rule that indemnity provisions are limited to third-party claims unless a contract clearly and unambiguously shows an intent to extend indemnity to first-party claims is in accord with the holdings in a majority of the jurisdictions that have considered similar issues. See generally, NevadaCare, Inc. v. Dep't of Human

10

Servs., 783 N.W.2d 459, 471 (Iowa 2010) (noting that a clause that uses "the terms 'indemnify' and 'hold harmless' indicates an intent by the parties to protect a party from claims made by third parties rather than those brought by a party to the contract" and "a party to a contract cannot use an indemnity clause to shift attorney fees between the parties unless the language of the clause shows an intent to clearly and unambiguously shift the fees"); Nova Research, Inc. v. Penske Truck Leasing Co., 952 A.2d 275, 287 (Md. 2008) (listing several cases applying the rule that indemnity provision must be interpreted narrowly).

Here, the indemnification provision in the parties' management agreement falls short of expressly stating or indicating that MVW's right to indemnification applies to a first-party claim like the one here by Regalia against MVW. A simple comparison of the language in Regalia's operating agreement to the language in the parties' management agreement resolves any doubt that the management agreement was not intended to apply to a first-party action. Regalia's operating agreement contains unequivocal language indicating that its terms apply to first-party claims: "No Covered Person shall be liable to the Company or any other Covered Person for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Covered Person . . . ." The management agreement lacks any such language. If the parties intended the provisions in the management agreement to extend to first-party claims, they knew how to do so, as

evidenced by language in Regalia's operating agreement. It is difficult to understand why the parties could have intended the less-explicit language of their management agreement to extend the same rights as the more-explicit language of Regalia's operating agreement.

MVW argues that the indemnification language in the parties' management agreement is virtually identical to language that the Florida Supreme Court held authorized attorney's fee indemnification in Wendt v. La Costa Beach Resort Condo. Ass'n, Inc., 64 So. 3d 1228, 1230 (Fla. 2011). In Wendt, the directors of a corporation who had been sued by the corporation for breach of fiduciary duty brought a separate action for indemnification of attorney's fees and costs under section 607.0850, Florida Statutes. The trial court dismissed the directors' lawsuit and the Fourth District affirmed based on the common law principle that a party is entitled to indemnification for attorney's fees and costs only when it had been sued vicariously or technically for another's wrongdoing – not for its own.

The Supreme Court reversed. It held that section 607.0850 authorizes indemnification of attorney's fees and costs to a director sued in first-party litigation by his or her corporation and remanded for consideration on the merits. In so holding, the Court noted that subsection (2) expressly authorizes indemnity for attorney's fees in any proceeding "by or in the right of the corporation to procure a judgment in its favor." Id. at 1230. The Court compared this language

12

to subsection (1), which expressly prohibits indemnity for liability in "an action by, or in the right of, the corporation." Id.

Contrary to MVW's argument, therefore, the language in the parties' management agreement is not virtually identical to the language in section 607.0850. In fact, the management agreement lacks the crucial, express language providing for indemnity of litigation expenses in any proceeding "by or in the right of the corporation to procure a judgment in its favor," which is the basis of the holding in Wendt. Wendt, therefore, does not support MVW's argument. Far from supporting MVW's position, we believe the statute discussed in Wendt indicates that the public policy of Florida is to require that the inclusion or exclusion of first-party actions in indemnity provisions be expressly stated or otherwise made clear and unambiguous as was done in section 607.0850.[3]

MVW also relies on this court's decision in Adweiss LLLP v. Daum, 208 So. 3d 760, 761 (Fla. 3d DCA 2016). While the underlying facts in Adweiss concern the advancement of attorney's fees in a first-party dispute involving an indemnification provision virtually identical to the one in the parties' management agreement here, Adweiss is not persuasive in this case for two reasons.

---

[3] We understand MVW makes its argument by analogy. Section 607.0850 applies to corporations. MVW is a limited liability company and would be governed by section 605.0408.

13

First, this court in <u>Adweiss</u> interpreted Delaware law while the instant case is governed by Florida law.  And second, this court in <u>Adweiss</u> did not adjudicate the question of whether an indemnification provision applied to a first-party action. It has long been the law of Florida that "[n]o decision is authority on any question not raised and considered, although it may be involved in the facts of the case." <u>State ex rel. Helseth v. Du Bose</u>, 128 So. 4, 6 (Fla. 1930).  For example, in <u>Speedway SuperAmerica, LLC v. Tropic Enterprises., Inc.</u>, 966 So. 2d 1, 3 (Fla. 2d DCA 2007), the Second District held that a trial court erred by treating a judicial decision as binding on an issue that was not raised, argued, or analyzed. The Second District reasoned that the decision could not be precedent on a particular issue because "[t]hat issue was not presented to the court, and it was not decided by the court."  <u>Id.</u>;  <u>See also</u> <u>Twyman v. Roell</u>, 166 So. 215, 217 (Fla. 1936) ("To be of value as a precedent, the questions raised by the pleadings and adjudicated in the case cited as a precedent must be [o]n point with those presented in the case at bar."); <u>Rey v. Philip Morris, Inc.</u>, 75 So. 3d 378, 381 (Fla. 3d DCA 2011) ("No Florida appellate decision is authority on any question not raised and considered, although it may be involved in the facts of the case." (quotation omitted)).

The actual holding of <u>Adweiss</u> was that, under Delaware law, the inclusion of the word "defend" in an indemnification provision specifying that the Company shall "indemnify, defend and hold harmless" even without reference to

14

advancement, entitled the manager to advancement of his litigation expenses. That was the issue briefed by the parties and decided by this Court.  In <u>Adweiss</u>, no party argued that such an indemnification provision applied to only third-party claims; the opinion has no discussion on that point; and this Court made no express holding on that point. Accordingly, <u>Adweiss</u> does not govern our decision in this case.

## Conclusion

The trial court correctly held that MVW is not entitled to advancement of legal fees in this first-party action brought against MVW by Regalia.  MVW is not entitled to advancement under Regalia's operating agreement because it does not qualify as a "Covered Person" under the contract.  And because the parties' managing agreement does not explicitly extend its indemnification provision to first-party actions, we reject MVW's argument that it is entitled to advancement of fees under that contract.  Accordingly, we affirm.

Affirmed.